AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

Northern District of California

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. |
| Moyses Raudales | ) | 3:19-71171 |
| *Defendant(s)* | ) | |

FILED
AUG -2 2019
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
EDL

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __July 23, 2019__ in the county of __San Francisco__ in the __Northern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. sections 841(a)(1) and (b)(1)(C) | Distribution of Narcotics, to wit, cocaine base |
| | Maximum 20 Years' Imprisonment; Maximum Fine of $20 million; Maximum term of Supervised Release of life; Mandatory $100 Special Assessment |

This criminal complaint is based on these facts:

Please see attached affidavit of DEA Special Agent Brandon Cahill

Approved as to form _____
Alex G. Tse, AUSA

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Brandon Cahill, DEA Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: Aug 2, 2019

_____
*Judge's signature*

City and state: __San Francisco, California__   Hon. Elizabeth D. Laporte, Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Brandon Cahill, a Special Agent with the Drug Enforcement Administration (DEA), being duly sworn, depose and state:

### I.     INTRODUCTION

1.      I make this Affidavit in support of a Criminal Complaint against MOYSES RAUDALES, for a violation of Title 21, United States Code, Sections 841(a)(1) and(b)(1)(C), possession with intent to distribute cocaine, a Schedule II controlled substance.

2.      The facts set forth in this Affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, my review of documents and computer records related to this investigation, communications with others who have personal knowledge of the events and the circumstances described herein, and information gained through my training and experience.

3.      Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of a Complaint, it does not set forth each and every fact that I, or others, have learned during the course of the investigation.

### II.    AGENT BACKGROUND

4.      I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

5.      I am employed by the United States Department of Justice, Drug Enforcement Administration ("DEA"), as a Special Agent and have been so employed since August 2015. I am assigned to the San Francisco Divisional Office.

6.      I received 20 weeks of specialized drug law enforcement training at the DEA training academy in Quantico, Virginia, from August 2015 to January 2016. The training curriculum covered all aspects of drug investigations, including identification of controlled substances, physical and electronic surveillance, utilization of confidential sources, interview techniques, undercover operations, financial investigations, money laundering techniques, and the general operation of drug trafficking organizations. This training included instruction in the investigation of federal drug violations, including, but not limited to Title 21, United States Code, Sections 841 and 846. Additionally, this training included several hundred hours of comprehensive, formalized instruction in, but not limited to, controlled substances investigations, drug identification, detection, interdiction, financial investigations and money laundering, identification and seizure of drug related assets, undercover operations, and electronic and physical surveillance procedures. My employment background also includes over a year with the United States Secret Service Uniformed Division.

1

7.      During the course of my employment as a DEA Special Agent, I have participated in over 100 controlled substance investigations either as a case agent or in a supporting role. I have debriefed confidential sources and witnesses who had personal knowledge regarding drug trafficking organizations. In addition, I have discussed with numerous law enforcement officers and confidential sources the methods and practices used by drug traffickers. I have also participated in many aspects of drug investigations including, but not limited to, undercover operations, telephone toll analysis, records research, physical surveillance, and assisted in court ordered wiretap investigations. Moreover, I have assisted in the execution of no fewer than 50 federal and state search and arrest warrants related to illegal activities involving controlled substances that resulted in the arrest of suspects and seizure of controlled substances.

8.      I have monitored, conducted surveillance, or otherwise participated in no fewer than 10 investigations that utilized wire interceptions. I have participated in writing, editing, and reviewing federal affidavits made in support of electronic interceptions. In addition, I have participated, in connection with these and other cases, in approximately two follow-up investigations concerning the concealment of assets, money, bank records, etc., and the identification of co-conspirators through the use of drug ledgers, telephone records and bills, photographs, and financial records.

9.      Through my training, education, experience, and my conversations with other agents and officers who conduct drug investigations, I have become familiar with drug traffickers' use of mobile telephones, and their use of numerical codes and code words to conduct their business. I have become familiar with drug traffickers' methods of operation, including, but not limited to, the manufacturing, distribution, storage, and transportation of controlled substances, and the methods used by drug traffickers to collect, transport, safeguard, remit, and/or launder drug proceeds. By virtue of my training and experience, and through my conversations with other agents and officers who conduct drug investigations, I have become familiar with the methods used by drug traffickers to import, transport, safeguard, and distribute drugs, and the methods used by drug traffickers to collect, transport, safeguard, remit, and/or launder drug proceeds.

### III.    APPLICABLE LAW

10.     Section 841 of Title 21 of the United States Code provides, in pertinent part: "it shall be unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance[.]"

### IV.    FACTS ESTABLISHING PROBABLE CAUSE

11.     On July 23, 2019, at approximately 7:20 p.m., a San Francisco Police Department undercover officer was walking west on the south side of 7th Street, from Mission Street towards Market Street. The San Francisco Federal Building, at 90 7th Street, is on the west side of 7th Street. The Ninth Circuit United States Court of Appeals is on the east side of the 7th Street. At this time in the evening, the area is active with people loitering or walking around.

12.     The undercover officer made eye contact with MOYSES RAUDALES who was standing inside the plaza area of the San Francisco Federal Building near the sidewalk on 7th

2

Street. RAUDALES then approached the undercover officer and sat down on a retaining wall adjacent to the building near the sidewalk. The undercover officer approached RAUDALES and sat down next to RAUDALES. The undercover officer asked RAUDALES to buy 4 "nickels" of "roca" (the street name for base rock cocaine) for $17. The undercover officer handed RAUDALES the $17 in Marked City Funds, and RAUDALES counted the cash money. RAUDALES retrieved a clear plastic baggie containing numerous rocks of suspected base cocaine from his front hooded jacket pocket. The rocks were exposed and unwrapped and it appeared to be approximately ½ ounce of cocaine base in the baggie. RAUDALES took 4 small rocks of suspected base cocaine from the clear plastic baggie and handed them to the undercover officer. After the exchange, the undercover officer walked away from RAUDALES heading south on 7th Street.

13. Approximately ten minutes later, the undercover officer observed uniformed SFPD officers arrest RAUDALES on 7th Street and north of Mission Street. The undercover officer positively identified RAUDALES as the individual who sold him the suspected cocaine base.

14. The undercover officer transferred the suspected cocaine base to DEA Task Force Officer Britt Elmore. Task Force Officer Elmore used a TruNarc presumptive narcotics testing device ("TruNarc") to test the suspected cocaine base RAUDALES sold the undercover officer. The TruNarc presumptively identified the substance as cocaine base.

15. RAUDALES has been arrested on numerous occasions in the Tenderloin for narcotics related offenses. On February 16, 2018, RAUDALES was arrested at or about Eddy and Polk streets at 1:35 a.m. for crimes involving the sale and possession of a controlled substance. On March 14, 2018, RAUDALES was arrested at Golden Gate Avenue and Hyde Street at 9:03 a.m. for crimes involving the sale and possession of a controlled substance. On May 9, 2018, RAUDALES was arrested at 8th and Mission Streets at 1:43 p.m., for crimes involving the sale and possession of a controlled substance. During this May 9th arrest, RAUDALES fled on foot in the middle of busy traffic attempting to avoid his arrest. On June 6, 2018, RAUDALES was arrested at 1125 Market Street at 12:32 p.m. for crimes involving the sale and possession of a controlled substance.

16. Based on his prior criminal drug activity, RAUDALES is subject to a court stay away order from specific streets in the Tenderloin that remains in effect against him until June 14, 2021.

17. Based on my training and on conversations other law enforcement officers, and based on a review of the video surveillance footage from the narcotics transaction described above, I believe RAUDALES possessed cocaine base for sale and did in fact sell it to the undercover officer.

//

//

3

## V.  CONCLUSION

18.  Based upon the information contained within this Affidavit, I submit that I have established probable cause to believe that MOYSES RAUDALES has violated Title 21, United States Code, Section 841(a)(1) and (b)(1)(C), possession with intent to distribute cocaine.

I declare under penalty of perjury that the statements above are true and correct to the best of my knowledge and belief.

Respectfully submitted,

_____
Brandon Cahill
Special Agent
Drug Enforcement Administration


Subscribed and sworn to before me on August ___, 2019.

_____
HONORABLE ELIZABETH D. LAPORTE
UNITED STATES CHIEF MAGISTRATE JUDGE

4